UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORMFACTOR, INC.,<br><br>   Plaintiff,<br><br>  v.<br><br>MARTEK, INC.,<br><br>   Defendant. | Case No. 14-cv-01122-JD<br><br>**ORDER RE MOTIONS TO DISMISS COUNTERCLAIMS** |

  In this business-to-business litigation, FormFactor, Inc. ("FormFactor") has sued MarTek, Inc. ("MarTek") for copyright infringement, breach of written contract and violations of state and federal unfair competition laws. The factual basis of FormFactor's operative complaint has to do with MarTek's allegedly unauthorized, continued use of certain software past the termination of the license agreement between the two parties. MarTek, in turn, has asserted eleven counterclaims against FormFactor as well as another company, Seneca Merger Sub, Inc. ("Seneca"), which was MarTek's original contracting counter-party that later assigned its rights and obligations under the contract to FormFactor.[1] MarTek's counterclaims against FormFactor include fraud in the inducement, mistake, breach of contract and breach of the covenant of good faith and fair dealing, and all involve the same license agreement that is at issue in FormFactor's complaint against MarTek. FormFactor has moved to dismiss all but one of MarTek's counterclaims, and the Court grants in part and denies in part the motion.

**BACKGROUND**

  The Court focuses on the key facts as they are alleged in MarTek's second amended counterclaim for purposes of this order. *See* Dkt. No. 59. Since its founding in 1995, MarTek has

---

[1] Defendants refer to both FormFactor and Seneca collectively as "FormFactor." Dkt. No. 34 at 1. Except as otherwise noted, the Court does the same.

historically "been in the business of selling refurbished semiconductor wafer probers, upgrades, and parts, and providing service, installation, and repair services for a variety of" probers. *Id*. ¶ 8. A prober is a "positioning tool used by semiconductor manufacturers to test integrated circuits during the manufacturing process." *Id*. FormFactor is a manufacturer of "probe cards," which is another component of the wafer testing process. *Id*. ¶¶ 11-12.

The present dispute between MarTek and FormFactor centers on the intellectual property and other assets that formerly belonged to Electroglas International, Inc. ("Electroglas"). Electroglas "was one of the first commercial manufacturers of probers" and consequently "MarTek's business was historically focused around Electroglas's probers," but it filed for bankruptcy in July 2009. *Id*. ¶¶ 8, 10. Electroglas's assets were subsequently auctioned off, with separate bids solicited for "the MCAT Business" and "the Prober Business." *Id*. ¶ 13. FormFactor and Seneca "ultimately acquired Electroglas's MCAT Business" and entered into an asset purchase agreement with Electroglas for those assets as contemplated by the bankruptcy court's order authorizing the sale. *Id*. ¶¶ 15-16.

MarTek thereafter approached FormFactor for an opportunity to license Electroglas's intellectual property so that MarTek could enter the business of building new wafer probers. *Id*. ¶¶ 18-19, 41. The tale MarTek tells of its relationship with FormFactor is rocky and complicated, and this initial contracting process appears to have been no exception. But MarTek alleges that it did successfully enter into an Intellectual Property License Agreement ("IPLA") with Seneca with an effective date of March 11, 2010, and that "at some point thereafter, Seneca assigned to FormFactor the assets it had acquired in the Electroglas bankruptcy and its rights and obligations under the IPLA." *Id*. ¶ 23.

According to MarTek, the problems that arose after that are many. The Court summarizes them at a high level here in the context of the counterclaims that FormFactor has moved to dismiss. In the first cause of action, for "fraud in the inducement -- concealment," MarTek alleges that FormFactor concealed certain facts, and that MarTek "would not have entered into the IPLA had it known that Counter-Defendants failed to take all appropriate steps to inspect the Electroglas intellectual property that they acquired and to secure it from potential employee theft, copying or

2

other misappropriation." *Id*. ¶ 90. The second and third causes of action allege the same factual circumstances as "mutual mistake" and "unilateral mistake," respectively. *Id*. ¶¶ 93-103. The fourth cause of action for breach of written contract sets forth a long list of the ways in which counter-defendants have allegedly "failed and refused, and continue to refuse, to perform as required by the IPLA," including by failing to provide various software, databases, manuals and the like. *Id*. ¶ 106.

The fifth cause of action, for breach of the implied covenant of good faith and fair dealing, asserts, among other things, that "FormFactor's conduct in effectively denying MarTek and its agents access to the prober-related source code unfairly interfered with MarTek's right to receive the benefits of the IPLA." *Id*. ¶ 115. The sixth cause of action, also for breach of the implied covenant, alleges that counter-defendants "entered into similar licensing agreements with many other entities or individuals," and that by doing so and by providing those entities or individuals with "better and more responsive service than what it provided to MarTek," they "unfairly interfered with MarTek's right to receive the benefits of the IPLA . . . ." *Id*. ¶¶ 118-20. The seventh cause of action seeks declaratory relief in the form of having Section 5.02 of the IPLA, a limitation of liability provision, declared unenforceable under section 2719(2) of the California Uniform Commercial Code because it "fails of its essential purpose." *Id*. ¶¶ 127-30.

The ninth cause of action alleges "failure of consideration" on the basis that "when Counter-Defendants entered into the IPLA, they never intended to collect all the intellectual property that had been used by Electroglas . . . ." *Id*. ¶ 139. The tenth cause of action alleges an oral contract was formed at a "face-to-face meeting on or about June 12, 2013" and that those terms were breached. *Id*. ¶¶ 144-48. Finally, the eleventh cause of action asserts that FormFactor has been unjustly enriched. *Id*. ¶ 152.

Before the Court are two motions to dismiss which were sequentially filed by counter-defendants. Dkt. Nos. 34, 61. At the hearing on the first motion, the Court granted the motion to dismiss from the bench only as to MarTek's seventh cause of action as alleged in MarTek's first amended counterclaim (Dkt. No. 28), *i.e.*, seeking to invalidate the limitation of liability provision (Section 5.02 of the IPLA) on the grounds that it was unconscionable. *See* Dkt. No. 56. The

1  Court advised MarTek at the hearing that it could file a further amended counterclaim amending
2  that cause of action only, but that it could not make any other amendments.  The Court also
3  advised FormFactor that while it was free to move to dismiss the amended seventh cause of action
4  once it was filed by MarTek, the Court would deem FormFactor's arguments as put forward in its
5  initial motion to dismiss (Dkt. No. 34) as applying to the remaining causes of action.  MarTek
6  thereafter did file a second amended counterclaim amending its seventh cause of action (Dkt.
7  No. 59), and FormFactor filed its second motion to dismiss (Dkt. No. 61).

8  The Court consequently considers FormFactor's second motion to dismiss (Dkt. No. 61)
9  only as to the seventh cause of action in MarTek's second amended counterclaim.  For the first
10 through sixth and ninth through eleventh causes of action, the Court considers only those
11 arguments that were made in FormFactor's initial motion to dismiss (Dkt. No. 34).  The Court
12 resolves the two motions together.

### DISCUSSION

### I. LEGAL STANDARD

FormFactor's motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). Putting aside allegations of fraud which must meet the heightened pleading requirements of Rule 9(b), in general, a complaint may be dismissed under Rule 12(b)(6) when it fails to meet Rule 8(a)'s requirement to make "a short and plain statement of the claim showing that the pleader is entitled to relief."  To avoid dismissal under Rules 8(a) and 12(b)(6), the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly* at 556).  "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 677).

If the Court dismisses a complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured

4

by the allegation of other facts." *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks and citation omitted).

## II. BREACH OF CONTRACT (COUNTERCLAIM NO. 4)

The Court takes up the counterclaims out of numerical order, because some of FormFactor's dismissal arguments apply to more than just the counterclaim to which the argument is primarily directed. Indeed, FormFactor's argument for the dismissal of MarTek's breach of contract claim is at the center of its motion to dismiss, and the Court's evaluation of that argument correspondingly drives much of the analysis in this order.

FormFactor's argument is founded upon Section 2.08 of the IPLA. Because of the importance of that section, the Court recites it here in full:

> Section 2.08. *Delivery of Intellectual Property.* Within twenty-one (21) days of the Effective Date, Licensor agrees to provide Licensee with the software (in object code form only) as identified as "Software to be Provided by Licensor" in the table of Exhibit A. Within fifteen (15) days of any written notice from Licensee, Licensor will endeavor to obtain a copy and deliver to Licensee any specific Prober Intellectual Property licensed hereunder not expressly identified in Exhibit A as "Software to be Provided by Licensor" being made available, but it is understood that Licensor has no obligation to provide to Licensee any such materials, except for the list of Prober Intellectual Property to be provided pursuant to Section 2.09. In no event will Licensor provide software source code to Licensee.

Dkt. No. 34-2 at 5. The table in Exhibit A to the IPLA in turn sets forth 17 different "EG Probers" and notes what software for each prober is "to be provided by Licensor" as well as whether the product brochure is to be appended, too, or not. *Id.*, Ex. A. Section 2.09 of the IPLA states that "[w]ithin fifteen (15) days of the Effective Date, Licensor agrees to provide to Licensee access to a list of the Prober Intellectual Property that was purchased from Electroglas, as set out in the Purchase Agreement." *Id.* at 5.

Relying heavily on the "no obligation to provide" language in Section 2.08, FormFactor asserts that "the black-and-white language of Section 2.08 of the IPLA does not require FormFactor to deliver anything other than (1) the object code (not source code) for the seven software versions listed in Exhibit A, and (2) a list of items defined in Section 2.09." Dkt. No. 34 at 9. Though FormFactor acknowledges that "certain very limited 'sub-counterclaims'" which are

5

in fact based on Exhibit A or Section 2.09 may survive, it argues that "any claims premised on failure to deliver materials not specifically enumerated in Section 2.08/Exhibit A fail." *Id*. at 10 n.9.

FormFactor's argument is not well-taken. It is of course axiomatic that a contract must be interpreted as a whole, giving effect to every provision. *See* Cal. Civil Code § 1641. Here, the first provision listed under Article 2 ("Grant of Rights") is Section 2.01, under which FormFactor grants to MarTek a "non-exclusive, non-assignable (. . .), royalty-bearing license under the Prober Intellectual Property to make, have made, use, sell, offer for sale, export and import the Licensed Products and any Improvements with the Software, solely in the Licensee Field." Dkt. No. 34-2 at 4. "Prober Intellectual Property" is defined to mean "only that portion of the Intellectual Property acquired by Licensor from Electroglas under the Purchase Agreement, which was used by Electroglas to manufacture, use, sell, support service and repair EG Probers immediately prior to the effective date of the Purchase Agreement." *Id*. at 3.

It is difficult to imagine why MarTek would have paid money to license intellectual property that it does not have and which FormFactor has no obligation whatsoever to provide to MarTek. Yet that is precisely what FormFactor claims happened here. It argues that "the primary purpose of the IPLA was not to provide MarTek with software and support," but rather to give it "a simple covenant not to sue" and "simply to ensure that MarTek has a license to use all of [the Intellectual Property as defined in Section 2.01 of the IPLA], regardless of where it came from." Dkt. No. 44 at 3.

Although FormFactor contends that "the language of the IPLA is completely unambiguous" and its interpretation is clearly correct as a matter of law, the Court disagrees. Section 2.08 itself expressly places on FormFactor an obligation to "endeavor to obtain . . . and deliver" to MarTek "any specific Prober Intellectual Property licensed hereunder not expressly identified in Exhibit A as 'Software to be Provided by Licensor,'" even though it at the same time states that FormFactor "has no obligation to provide to Licensee any such materials, except for the list" required to be provided under Section 2.09. Contrary to FormFactor's argument, the Court finds as a matter of law that this contested term is ambiguous. FormFactor's motion to dismiss is

6

1  denied as to MarTek's breach of contract claim and the interpretation of the disputed term will be
2  left for the trier of fact.

### III. DECLARATORY RELIEF (COUNTERCLAIM NO. 7)

The Court's finding about MarTek's breach of contract claim compels the rejection of FormFactor's argument for MarTek's declaratory relief counterclaim also. In the operative counterclaim currently before the Court, MarTek requests that the limitation of liability provision in Section 5.02 of the IPLA be declared invalid pursuant to section 2719(2) of the California Uniform Commercial Code, because "the IPLA, including section 5.02, failed of its essential purpose." Dkt. No. 59 ¶¶ 127-28. Section 5.02 prohibits, among other things, MarTek's recovery of "special, incidental, punitive or consequential damages or lost profits." *See* Dkt. No. 34-2 at 8.

FormFactor's argument for dismissing the counterclaim is that "the IPLA was a license -- not a contract for the sale of goods -- and Counterclaim No. 7 fails because the UCC does not apply." Dkt. No. 61 at 7. But to determine whether a transaction like the one here is for the sale of a good or to provide services, the Court is to "look to the essence of the agreement" and to "apply a case-by-case analysis." *RRX Industries, Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985). "When a sale predominates, incidental services provided do not alter the basic transaction." *Id. See also Softman Products Co., LLC v. Adobe Sys., Inc.*, 171 F. Supp. 2d 1075 (C.D. Cal. 2001) ("It is well-settled that in determining whether a transaction is a sale, a lease, or a license, courts look to the economic realities of the exchange.") (citations omitted).

FormFactor's argument that the "essential purpose" of the IPLA "was merely to allow use of intellectual property in exchange for royalties" is identical to its argument directed at the breach of contract counterclaim, *i.e.*, that "[t]he IPLA expressly disclaimed any obligation to provide MarTek all but the most meager deliverables (IPLA, Sections 2.08, 2.10, 5.01), intentionally leaving MarTek responsible to find its own way in the prober market . . . ." Dkt. No. 61 at 7. Just as the Court has rejected FormFactor's contract interpretation argument, it rejects FormFactor's argument for the dismissal of the seventh counterclaim. The Court cannot find as a matter of law at this stage that the IPLA was a contract for services, rather than a sale of goods, and that the UCC consequently does not apply. FormFactor's motion to dismiss the declaratory relief

counterclaim is consequently denied.

## IV. FRAUD IN THE INDUCEMENT AND MISTAKE (COUNTERCLAIMS NOS. 1-3)

MarTek's first through third counterclaims are based on a slightly different set of facts. In paragraphs 36 through 40 of the second amended counterclaim, MarTek asserts the following: (1) counter-defendants "failed to conduct an adequate inspection prior to October 2, 2009 of the assets on which they bid in the Electroglas bankruptcy" and "failed to take adequate steps" before or after October 9, 2009 "to ensure the protection and security of" those assets; (2) counter-defendants failed to so inform MarTek during "the negotiations"; (3) MarTek "is informed and believes" that Electroglas's President and CEO "took master copies of disks and other media" from the Electroglas premises "following the entry of the Order of October 2, 2009 and EGS' asset purchase agreement with Electroglas on October 20, 2009"; and (4) MarTek "is informed and believes" that the former Eletroglas employees who founded certain new companies also "removed master copies of disks and other media containing the softeware that Counter-Defendants had acquired from Electroglas, including EG Commander software and motion control software." Dkt. No. 59 ¶¶ 36-40. Based on these "facts alleged in Paragraphs 36 through 40," MarTek alleges counterclaims for "fraud in the inducement -- concealment," mutual mistake and unilateral mistake. *Id*. at 24-25.

FormFactor attempts to have these counterclaims dismissed primarily because MarTek allegedly "got what it was promised by the plain black-and-white terms of the agreement." *See* Dkt. No. 34 at 8, Dkt. No. 44 at 6. This, again, however, is simply a repeat of FormFactor's breach of contract argument which the Court has already rejected.

But the Court nevertheless finds it appropriate to dismiss these counterclaims. An examination of MarTek's fraud claim shows it to be insufficiently alleged. "Fraud in the inducement . . . occurs when the promisor knows what he is signing but his consent is induced by fraud." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (internal quotation marks omitted). The parties do not dispute that to state a fraud claim for concealment, a material fact that was not disclosed must be identified. *See also Stevens v. Superior Court*, 180 Cal. App. 3d 605, 608 (1986) ("intentional concealment of a material fact is an alternative form of fraud and

deceit equivalent to direct affirmative misrepresentation").

Here, to the extent MarTek is attempting to base its concealment claim on FormFactor's failure to disclose "that they had failed to conduct an adequate inspection" or to "take adequate steps . . . to ensure the protection and security of the assets" from Electroglas, any suggestion that that "fact" is "material" is not plausible. A simple thought experiment shows why that is so. If it had turned out that there had not been a theft of those assets, then MarTek would not have a concealment action against FormFactor. Whether FormFactor had or had not conducted an inspection is not the material fact; it is only FormFactor's continued possession (or non-possession) of master copies of the software and the like that might arguably be material.

The concealment claim, then, must logically be based on the alleged theft by the former employees of Electroglas as alleged in paragraphs 38 and 39, and to the extent that is the case, that claim must be dismissed for failure to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). The counterclaim does not contain the requisite "who, what, when, where and how" describing, for instance, who at FormFactor knew of those alleged thefts when. The fraud counterclaim is consequently dismissed with leave to amend.

Both the unilateral and mutual mistake of fact counterclaims must also be dismissed for failure adequately to plead the required elements. Under California Civil Code Section 1577, the mistake of fact must be "a fact past or present, material to the contract" (or a "[b]elief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed"). Because MarTek's mistake counterclaims point back broadly to "the facts alleged in Paragraphs 36 through 40," the Court finds that the claims do not give FormFactor adequate notice regarding what fact is even being alleged to have been the past or present fact that was material to the contract. While the Court will grant MarTek an opportunity to amend these claims, the Court is doubtful that these facts can properly be alleged under the rubric of unilateral or mutual mistake of fact. *See*, *e.g.*, *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 294 (2001) (rescinding contract on the ground of unilateral mistake where "[d]efendant entered into the contract because of its mistake regarding a basic assumption, the price" of the car at issue).

9

## V. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNTERCLAIMS NOS. 5-6)

MarTek's fifth and sixth counterclaims both assert claims for breach of the implied covenant of good faith and fair dealing. That covenant, which is "implied by law in every contract, exists . . . to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis omitted).

MarTek's fifth counterclaim takes issue with the fact that FormFactor denied MarTek and its agents "access to . . . prober-related source code," while at the same time "grant[ing] access to the SORTManager source code to MarTek's competitor WAVA." Dkt. No. 59 ¶ 114. MarTek's sixth counterclaim is based on the fact that FormFactor allegedly "entered into similar licensing agreements with many other entities or individuals" (when they "knew or should have known that doing so had the potential to harm MarTek") and provided those entities or individuals with "better and more responsive service." *Id.* ¶ 118-19.

But both of these claims must be dismissed because the covenant "cannot 'be endowed with an existence independent of its contractual underpinnings'" and it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349. *See also Pasadena Live, LLC v. City of Pasadena*, 114 Cal. App. 4th 1089 (2004) ("The implied covenant of good faith and fair dealing is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract.") (citation omitted).

For its claim that FormFactor failed to provide source code, MarTek itself acknowledges in its counterclaim that "Section 2.08 of the IPLA provides, in part, 'In no event will Licensor provide software source code to Licensee.'" Dkt. No. 59 ¶ 110. In other words, the contract in effect gave FormFactor the right not to have to provide any source code to MarTek, and MarTek cannot state a claim for breach of the good faith and fair dealing on the basis that FormFactor failed to provide source code. *See Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 374 (1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly

1    permitted by an agreement."). And for MarTek's complaints regarding infavorable or unequal

2    treatment vis-à-vis other individuals and entities, MarTek has failed to identify -- and the Court

3    cannot find -- any "contractual underpinning" that would support any claims founded thereon.

4    The Court consequently dismisses the fifth and sixth counterclaims, but will grant MarTek an

5    opportunity to amend both claims.

## VI. FAILURE OF CONSIDERATION (COUNTERCLAIM NO. 9)

MarTek's ninth counterclaim is for failure of consideration. Dkt. No. 59 ¶¶ 138-43. FormFactor moves to dismiss it on the ground that it amounts to a "duplication" of MarTek's counterclaim for breach of contract. Dkt. No. 34 at 12-13. MarTek argues in opposition that it is not duplicative and presents an alternate theory "assum[ing] that a contract was never formed, due to failure of consideration." Dkt. No. 41 at 5.

MarTek cites a single California case from 1929, but that case supports dismissal. There, the court held that the allegations regarding "failure to deliver one automobile of the value of $300, shortage in the agreed number of chickens, defective quality of the chickens" and the like "represent[ed] breaches of contract rather than failure of consideration." *Lubarsky v. Chavis*, 99 Cal. App. 610, 614 (1929). The court did find, however, that the complaint was "still broad enough to present . . . failure of consideration caused by the destruction of the $3,000 building on the property the total purchase price of which was $11,000," where the building had "burned after the making of the contract through no fault of the plaintiff." *Id*. at 614. The facts here are more like the former.

Moreover, an allegation included under this counterclaim expressly states that "Counter-Defendants' failure to collect and deliver the Electroglas intellectual property constitutes a material breach of the IPLA," Dkt. No. 59 ¶ 142, acknowledging the reality that this claim is no different from MarTek's breach of contract counterclaim. Duplicative and superfluous causes of action are not helpful either to the parties or the Court. MarTek has its breach of contract counterclaim which is going forward, and the failure of consideration counterclaim is consequently dismissed without leave to amend.

## VII. BREACH OF ORAL AGREEMENT (COUNTERCLAIM NO. 10)

MarTek also alleges the breach of an oral agreement which it claims arose "[i]n a face-to-face meeting on or about June 12, 2013." Dkt. No. 59 ¶145. Although FormFactor argues that this supposed oral contract is barred by the integration clause contained in the IPLA, Dkt. No. 34 at 13, MarTek responds that the oral contract alleged is not a modification of the IPLA but a wholly new contract. Dkt. No. 41 at 13-14.

But as FormFactor points out, MarTek's own allegations tell a different story. The tenth cause of action incorporates by reference paragraphs 1 through 84 and 104 through 121. In paragraph 80, MarTek alleges that in June 2013, the parties "met again," and counter-defendants agreed to provide certain items and "to a 50 percent reduction in royalties due" under the IPLA, "to end the $25,000 annual fee, and to a credit of $30,000 for past discrepancies. Finally, Counter-Defendants agreed to negotiate in good faith a modification to the IPLA to incorporate the above terms . . . ." Dkt. No. 59 ¶ 80.

MarTek's claim that a wholly new -- and valid -- oral agreement was formed and breached simply are not plausible in light of the IPLA's integration clause. *See* Dkt. No. 34-2 at 10 ("No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed in ink by authorized representatives of Licensor and Licensee."). The claim is dismissed without leave to amend.

## VIII. UNJUST ENRICHMENT (COUNTERCLAIM NO. 11)

The final counterclaim that FormFactor seeks to dismiss is MarTek's eleventh counterclaim for unjust enrichment. But the Court finds that unjust enrichment is not an independent cause of action under California law, *see*, *e.g.*, *Ham v. Hain Celestial Grp., Inc.*, No. 14-CV-02044-WHO, 2014 WL 4965959, at *5 (N.D. Cal. Oct. 3, 2014) (citing cases), and consequently dismisses the unjust enrichment counterclaim without leave to amend.

## CONCLUSION

For the reasons above, the Court grants in part and denies in part counter-defendants' motion to dismiss MarTek's counterclaims. MarTek may file, if it so chooses, a further amended counterclaim amending its fraud, unilateral mistake, mutual mistake and breach of implied

covenant of good faith and fair dealing counterclaims only.  Any amended counterclaim must be filed by February 11, 2015.  FormFactor must file it answer or response by February 25, 2015.

**IT IS SO ORDERED**.

Dated:  January 28, 2015

_____
JAMES DONATO
United States District Judge